NIEMEYER, Circuit Judge,
dissenting: •
I
In addressing West Virginia’s statute of repose, W.V.Code § 40-1A-9, the majority has, I respectfully suggest, focused on the wrong transaction and thus has applied the statute of repose in a manner that could bar causes of action for fraudulent transfers under West Virginia’s Uniform Fraudulent Transfers Act even before the fraudulent transfers had been made.
While it is true that Virgil B. LaRosa created a line of credit for Cheyenne Sales Company with its bank in 2001, pledging his stock to secure the line, the line of credit was like a bank account on which Cheyenne could in the future draw as needed. There is no suggestion in the record, or by counsel, that in creating this line of credit, LaRosa acted with any fraudulent intent or purpose. The line of credit was simply a standing source of funds on which Cheyenne could thereafter draw for any purpose, legitimate or illegitimate.
The fraudulent transfer at issue in this case took place in 2003 when LaRosa ordered the bank to pay Cheyenne $700,000 from its line of credit for the purpose of avoiding creditors’ efforts to seize his pledged stock. The effect of this payment to Cheyenne was a sale of the stock for $700,000 to place it beyond the reach of creditors. And it was this 2003 transaction that the district court found was fraudulent, in violation of West Virginia’s Uniform Fraudulent Transfers Act, W.Va. Code § 40-lA-4(a), not the 2001 transaction that created the line of credit.
To find now that the limitations period for bringing a suit on the 2003 fraudulent transfer began before the cause of action accrued results in an absurdity, which we should not impute to the West Virginia legislature. More importantly, the language of the limitation provision does not support this construction. The statute provides in relevant part:
A cause of action with respect to a fraudulent transfer ... under this arti *733 cle is extinguished unless action is brought ... fujnder [.§ kO-lA-k (a)] ... within four years after the transfer was made.
W.V.Code § 40-lA-9(b) (emphasis added). By employing the definite article, the last clause, “within four years after the transfer was made,” refers back to the opening clause — “[a] cause of action with respect to a fraudulent transfer.” West Virginia’s statute, therefore, does not extinguish fraudulent transfer suits by reference to related, but nonfraudulent, transfers. Instead, like any sensible statute of repose, the provision only bars causes of action for fraudulent transfers that have accrued. Because the fraudulent transfer in this case took place in 2003, as the district court found, the subsequent suit, filed within four years of that transfer to obtain relief from it, was therefore timely filed.
I respectfully conclude that the district court analyzed the statute of repose correctly and would therefore affirm its ruling on this issue.
II
In calculating the amount of relief, the majority has again focused, I respectfully submit, on the wrong transactions — those between Cheyenne and a related corporation, Regal Coal Company, and between Regal and its principals. In doing so, the majority has lost sight of the fact that the only transactions that could be addressed for purposes of relief are those by which assets were transferred from, Virgil B. La-Rosa to others. Bee W.V.Code § 40-1A-1(b) (limiting the definition of “[a]sset[s]” covered by the statute to “property of a debtor”) (emphasis added). LaRosa was the judgment debtor (along with his wife, Joan), and only transfers from him could be considered fraudulent with respect to the judgment creditors.
To be sure, the subsequent transfers from Cheyenne to Regal and from Regal to its principals are necessary links in the story, connecting the judgment debtor’s initial transfer to Cheyenne with the eventual receipt of assets by Regal’s principals. But no evaluation of those transactions would be relevant to the amount of relief that could be granted, as the amount of relief would be limited by the amount of the transfers from LaRosa as the judgment debtor to others, which, as the district court found, was $1,191,609. Accordingly, I also conclude that the district court analyzed this issue correctly and therefore would affirm its judgment.
In short, I would affirm entirely the judgment of the district court.